### In re UNITED CIGAR STORES CO. OF AMERICA.

### IRVING TRUST CO. v. D. A. SCHULTE, Inc.

No. 354.

Circuit Court of Appeals, Second Circuit.

July 23, 1936.

Cravath, de Gersdorff, Swaine & Wood, of New York City (Donald C. Swatland and R. L. Gilpatric, both of New York City, of counsel), for reorganization trustee.

Jerome Eisner, of New York City (Julius B. Sheftel, of New York City, of counsel), for D. A. Schulte, Inc.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The claimant, itself the lessee of premises located on the northwest corner of Bowery and Canal streets in the city of

New York, sublet them to the debtor on May 17, 1929, for a term of ten years beginning June 1, 1929, at the annual rental of $6,000. The head lease under which the claimant held the property was for a longer period and carried exactly the same rental.

On August 29, 1932, the debtor filed its voluntary petition in bankruptcy and was adjudicated. The present trustee was at first appointed receiver and later elected trustee. It continued in possession of the premises until October 31, 1932, when it rejected the lease and vacated the premises. On that day the claimant re-entered and secured from its landlord a modification of the head lease reducing the annual rent payable thereunder to $4,000 or to 6 per cent. of its gross sales on the premises, whichever should be greater. No point is made that this six per cent. alternative rent might exceed $4,000 annually, and the rental will be now treated, as it has been throughout the litigation, as $4,000 per year, which is the amount the parties agree is the fair rental value of the premises. The claimant also agreed to assign to its landlord any rents due on subleases which were to be added, at the option of the landlord, to the rent to be paid by the claimant; and further agreed that its landlord might cancel the lease on written notice of ninety days. Claimant elected to use the premises itself when the bankrupt's trustee rejected the sublease and has since done so.

The sublease under which the bankrupt, this debtor, held the premises, provided upon default by the tenant that the under-landlord might re-enter and relet, in which event the subtenant was " * * * to remain liable for and to pay each month to the landlord the difference between the amount to be paid as rent herein reserved, and the amount which shall be collected and received by the landlord from the demised premises for such months, for and during the residue of the term herein originally demised and remaining after such termination and/or the taking of possession by the landlord until the time when this lease would have expired but for such termination * * *."

The claim filed was for $12,850, an amount less than the three-year maximum recoverable upon section 77B, Bankr.Act, 11 U.S.C.A. § 207. The portion allowed was $350 for the use and occupancy of the trustee up to the time of rejection. There is no dispute as to either amount. The sole issue is whether anything in addition to the fair value of the trustee's use and occupancy may be recovered.

Section 77B (b), of the act, 11 U.S. C.A. § 207 (b), provides in part that: "The claim of a landlord for injury resulting from the rejection of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease shall be treated as a claim ranking on a parity with debts which would be provable under section 63 (a) of this act [section 103 (a) of this title] but shall be limited to an amount not to exceed the rent, without acceleration, reserved by said lease for the three years next succeeding the date of surrender of the premises to the landlord, whichever first occurs, whether before or after the filing of the petition, plus unpaid rent accrued up to such date of surrender or reentry."

Though it is true that the lease was rejected by the trustee in bankruptcy, the above partial quotation from the statute shows that a landlord's recovery is only for the resulting injury as there limited. Immediately after the rejection the claimant re-entered. The term was then ended and no liability for future rent survived unless some covenant in the lease so provided. Section 77B does not create new claims after re-entry. Kuhner et al. v. Irving Trust Company, Tr. et al., 85 F.(2d) 35 (C.C.A.2) ; In re United Cigar Stores Co. of America (Otis), 83 F.(2d) 202 (C.C.A.). It is clear that up to this point the claimant has shown no ground for any allowance for injury from the rejection.

In so far as its claim is based upon damages or indemnity under a covenant in the lease its right is coextensive with the obligation of the tenant created by the covenant. Such a deficiency covenant is not a provision for liquidating the damages. Manhattan Properties, Inc., v. Irving Trust Co., 291 U.S. 320, 54 S.Ct. 385, 78 L. Ed. 824. This covenant was to pay the difference between the rent reserved and what the claimant should collect and receive upon reletting. But the claimant neither relet nor tried, so far as we are now advised, so to do. It elected rather to use the premises itself as it had a perfect right to do, but its election to do that was equally an election not to fulfill the condition whereby the covenant would create any liability on the part of the sublessee for a deficiency in rent. Saracena v. Preisler, 180 App.Div. 348, 167 N.Y.S. 871. We follow the New York law as to that. Gardiner v. Butler & Co., 245 U.S. 603, 38

S.Ct. 214, 62 L.Ed. 505. Consequently there was nothing to be recovered under the deficiency covenant, and it was correct to allow the claim only for the fair value of the trustee's use up to the time of rejection.

Order affirmed.